THE PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* FRANK M. PIXLEY, Attorney-General, *v.* JAS. T. STRATTON.

Attorney-General — Filing Information.—The Attorney-General may file an information in the nature of a bill in chancery, to annul a patent for lands granted by this State to an individual, in a case where the matter involved in the suit immediately concerns the rights and interests of the State.

Informations by Attorney-General.—An information is, in its substantive characteristics, a bill in equity, and when it concerns only the rights of the Government, or those whose rights are under the particular protection of the Government, is exhibited in the name of the Attorney-General as the informant; and in the former case a relator is sometimes, and in the latter case always, named who in reality sustains and directs the suit.

Information to Annul Patent.—If the State has no interest in the subject matter, an information on the relation of the Attorney-General, on behalf of the State, to annul a patent cannot be sustained.

Same.—If private citizens have an interest in the lands granted by the patent, and are threatened with injury by the patent, the information should be filed in the name of one or more of such persons, provided they are without adequate remedy at law; and in such case the relator's personal complaint should be joined to and incorporated with the information.

Same.—An information on the relation of the Attorney-General, on behalf of the State, to annul a patent which avers that the State has no interest in the lands patented, does not state facts sufficient to constitute a cause of action.

Swamp and Overflowed Lands.—If a State issues a patent for lands as swamp and overflowed lands, and the same are high lands as contradistinguished from swamp and overflowed, no title passes to the patentee by the patent; and any person having an interest in the lands may show that fact in his defense in an action at law by the patentee to recover possession.

Patent as Evidence.—Though a patent be in fact issued without authority of law, because the State had no title to grant, the presumption in an action of ejectment is, in the first instance, that the patent is valid and passes the title, and the burden of proof is cast on the one who undertakes to impeach the patent to establish the facts necessary for its overthrow.

People *v.* Stratton.

WHO MAY ATTACK PATENT.—If a patent is issued without authority of law, or the State had no title to grant, a person who owns the lands patented may invoke a Court of equity to restrain by perpetual injunction its use as evidence, or may maintain an action in his own name to annul it.

APPEAL from the District Court, Third Judicial District, Alameda County.

The facts are stated in the opinion of the Court.

*W. W. Crane, Jr.*, for Appellant.

All prosecutions on behalf of the State must be in the name of The People of the State. (Constitution, Art. VI, sec. 18.)

The Attorney-General is the Attorney of the State, and in an action on behalf of the people, his authority to prosecute the suit must be presumed until the contrary be shown. He is not called upon to plead or show his authority. (*State of Louisiana* v. *Smith*, 13 Louisiana Annual Rep. 424; *Commonwealth* v. *Fowler*, 10 Mass. 290; *Commonwealth* v. *Union Fire and Marine Ins. Co.*, 5 Mass. 230.)

A patent can only be set aside by *scire facias*, information, or bill in chancery. (*Jackson* v. *Lawton*, 10 John. 23; *Bagswell* v. *Broderick*, 13 Peters, 436; 8 Bacon's Abridg. 608.)

An information and bill are substantially the same, and when the people of the State are interested, the complaint is either by information or bill. (Mitford's Equity Pleadings, 22, 23; Story's Equity Pleadings, secs. 7–9.)

*Patterson, Wallace & Stow*, for Respondent.

If the land was (is) swamp and overflowed, the State has no interest to set aside the patent, because the sale was authorized by the statutes.

If not swamp and overflowed land, the State has no interest, but has received respondent's money without any consideration, and the patent was void for want of power to issue it. (*Summers* v. *Dickinson*, 9 Cal. 555; *Den* v. *Hill*, McAllister's R. 480; *People* v. *State*, 3 Barb. 556; *Burelson* v. *McGee*, 15 Texas, 375.)

If third persons have any title to, and they can show in an action of ejectment, or by filing a bill *quia timet* (Practice Act, sec. 8) that the patent is void for want of power to issue it. (9 Cal. 555.)

By the Court, CURREY, J.

The Attorney-General filed his information on the 6th of July, 1863, in the District Court of the Third Judicial District, in and for the County of Alameda, against the defendant, for the purpose of having the Court declare void and annul a patent for lands granted by the Governor of the State of California to the defendant, in April, 1862. The defendant was brought into Court by proper process and filed his answer to the information.

From the information it appears that in November, 1861, the defendant commenced proceedings, under the Acts of the Legislature providing for the sale and reclamation of the swamp and overflowed lands of this State, with a view of obtaining a title from the State to certain lands described in the information; and it is charged that he falsely represented the lands as of the character and quality mentioned in those Acts, and also that he so represented that he did not know of any legal or equitable claim, other than his own, to such lands; and it is alleged that by means of such false representations he obtained a patent for the lands described therein, when, in fact, they were not swamp or overflowed, salt marsh or 'tide lands, but were high lands, and that he well knew they were in the possession of divers persons, named in the information, who had a legal and equitable claim thereto; and the information further sets forth, that immediately after defendant obtained his patent he commenced an action against the persons named as having a legal and equitable claim to the lands, for the recovery of the possession thereof.

The answer of the defendant meets the several allegations and charges contained in the information; some by denials,

and others by confession and avoidance, by which an issue on every material matter of the information was joined.

At a term of the Court held in November, 1863, the defendant made a motion to dismiss the information and all the proceedings in the action on the grounds:

First—That the Attorney-General had no authority or power to institute or prosecute the proceedings in this action in the name or on behalf of the people of the State of California.

Second—That the proceeding by information is unknown to the laws of the State of California, and is not the proper proceeding to obtain the relief prayed for in the information filed.

After having heard counsel for the respective parties, the Court granted the motion upon the ground first set forth, and ordered and adjudged that all the proceedings in the action be dismissed and held for naught, and that the defendant go thereof without day. From this judgment the appellant has taken this appeal.

As the case stands upon the respondent's motion to dismiss the information, it must be considered that the allegations contained in it were true; and then the points to be determined are, in the first place, whether the action could be instituted and maintained in the name of the people of the State upon the information of the Attorney-General; and if it could, then, in the second place, whether the facts alleged constitute a case upon which the plaintiff is entitled to the decree thereby sought. We shall consider these propositions in their order as propounded.

1. The Third Article of the Constitution of this State is in the following language: "The powers of the Government of the State of California shall be divided into three separate departments—the Legislative, the Executive and Judicial—and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases hereinafter expressly directed or permitted." The Fifth Article

of the Constitution relates to the Executive Department of the State, and enumerates the officers who belong to it, and defines in general terms the powers and duties of some of such officers, while in respect to the powers and duties of others it is silent. The Attorney-General is of the number whose powers and duties are not in any manner specified in this Article or elsewhere in the Constitution.

In 1850 an Act was passed by the Legislature entitled "An Act concerning the office of Attorney-General," prescribing the duties of that officer. Among the duties which by that Act he was required to perform was to attend each of the terms of the Supreme Court, and there prosecute or defend all *causes to which the State might be a party.* Nowhere in the Act is it made the duty of the Attorney-General to institute any action in a Court of original jurisdiction on behalf of the State or otherwise; but it is declared that it shall be his duty to assist in all impeachments which may be tried before the Senate, and also whenever in his opinion required by the public service, or when directed by the Governor to repair to any district in the State and assist the District Attorney in the discharge of his duties. It is also made his duty, when required, to give his opinion in writing to the Legislature, or either House thereof, upon questions of law, and to the Governor and other officers mentioned upon any questions of law relating to their respective offices. (Laws 1850, p. 55.)

The Act, as already observed, does not make it the duty of the Attorney-General to institute any action on behalf the State in any Court of original jurisdiction, and from this silence, it is argued on behalf of the respondent, he can have no such power without the aid of legislative enactment. But can this be so, when the nature and objects of the office are considered?

The Attorney-General is the law officer of the State, and he is classed as belonging to the Executive Department of the Government. The Governor is the chief executive of that department, and by the Constitution it is made his duty to see that the laws are faithfully executed, and to this end

he must have the authority, in order to execute the powers belonging to his high office, to call to his aid, when necessary, the services of this law officer.   In England the Attorney-General was from an early period denominated an officer of State.   He was elevated to this high position by letters patent granted by the King, and he was the legal representative of the Crown in the Courts of law and equity; he exhibited informations and prosecuted for the Crown in criminal causes; he filed bills in the exchequer in revenue cases, and informations in chancery respecting matters in which the Crown was interested.   (Fortesque, Ch. 50.)

In *Commonwealth* v. *Fowler,* 10 Mass. 293, it was held that the Solicitor-General had the right *ex officio* to file an information against a person for usurping a public office; and in that case Mr. Chief Justice Parsons said : " An information for the purpose of dissolving a corporation, whether created by charter, under the seal of the Commonwealth, or by statute of the Legislature, may be prosecuted, either under the authority of the Legislature, to be exercised in each particular case, or by the Attorney or Solicitor-General acting *ex officio* in behalf of the Commonwealth."   (See also *State of Louisiana* v. *Smith,* 13 Lou. Ann. R. 424.)   The question as to the right of the Attorney-General of this State *ex officio* to file an information in the nature of a bill in chancery, to annul a patent for lands granted by the State to an individual, is one perhaps of difficult solution, but by analogy to the powers exercised by officers of like character in England, and in most, if not all of the States of the American Union, we think he may do so in a case where the matter involved in the suit immediately concerns the rights and interests of the State.

2.   The disposition made of the first question we have considered does not necessarily determine this case, for whether or not the Court erred in dismissing and holding for naught the action and proceeding instituted, though as the ground for the decision a wrong reason may have been assigned, depends upon the remaining question : Did the facts and circum-

stances set forth in the information constitute a cause authorizing a decree in accordance with the prayer of the appellant?

The information filed must be regarded and treated in its substantive characteristics as a bill in equity. (Mitford's Ch. Pl. 21 and 120; Cooper Eq. Pl. 101 and 107; Story's Eq. Pl. section 8.) Informations in every respect follow the nature of bills except in their style. When they concern only the rights of the Government, or those whose rights are under the particular protection of the Government, they are exhibited in the name of the Attorney-General as the informant, and in the latter case always, and in the former sometimes, a relator is named, who in reality sustains and directs the suit. (*Ibid.*)

When the suit immediately concerns the rights and interests of the State alone, the Attorney-General proceeds by information, as was done in the case of the *Attorney-General* v. *Vernon and others*, where the defendants had, by surprise and false representation, obtained a grant by letters patent of crown lands. (1 Vern. 277 and 370.) In such case the object of the suit is to annul the patent that the State may re-invest itself with the title to the lands improperly granted. (4 Steph. Com. 48.) So, also, in *Attorney-General* v. *Richards*, in the Exchequer, (2 Anstruther, 603,) where a nuisance and purpresture, by the erection of a wharf or quay, docks and other buildings, had been committed between high and low water mark in Portsmouth harbor, it was held, upon the authority of many cases, that an information would lie to abate it, as the Crown had the right to all ports and arms of the sea, and to the soil thereof.

It will be observed by these cases that it was a matter of prominent importance that the Government was immediately concerned in, as having a proprietary right in the subject matter sought to be affected by the suit.

In England, when the suit does not immediately concern the rights of the Government, as where the rights of those under its particular protection are concerned, as in the case of charities, having no charter to regulate them, or where there has been a trust conferred which has been abused, an informa-

tion may be filed in behalf of the Crown to have the charity properly established, or the grievance redressed.   But where informations of this kind were filed, the Attorney-General depended upon the relation of some person, whose name was inserted in the information as the relator, and the suit was carried on under his direction, and he was held responsible to the Court and to the parties for the propriety of the suit and the conduct of it, (Mitford's Ch. Pl. 23,) and also for the costs, in case the information was dismissed.   (Newland's Ch. Pr. 55 ; Cooper's Eq. Pl. 104 ; 1 Vesey, Sen. 72 ; 2 Vesey, Sen. 330.) It has been held, however, that a relator in such cases is not indispensable ; that the Attorney-General, if he pleases, may proceed without one.   (2 Swanst. 520 ; Story's Eq. Pl. sec. 8.) But the propriety of naming a relator, who should be held responsible for the bringing of the suit, and the oppression arising from a contrary practice, was particularly noticed in the case of *The Attorney-General* v. *Fox*, (cited in a note to page 24 of Mitford's Equity Pleading.)   In that case no relator was named, and though the defendants finally prevailed, they were put to an expense almost equal to the value of the property in dispute, and were entirely without remedy for their costs.   (1 Vesey, Sen. 72.)

If the State had no interest in the subject matter of the proceeding commenced to set aside the patent granted to the defendant, it is difficult to understand upon what principle the information, as an information purely on behalf of the State, could be sustained.   It is like a complaint that fails to state facts sufficient to constitute a cause of action, for the reason that it does not appear that the plaintiff has any interest in the subject matter of the action.

If the information in this case was filed for the purpose of annulling the patent because of its threatened injury to citizens of the State having interests in the lands described therein, then it should have been filed upon the relation of one or more of such persons, provided such persons were without adequate remedy at law.   And in such case the relator's personal complaint would be joined to and incorporated with the

32

information given to the Court, forming together an information and bill in equity.    (Mitford's Pl. 23 ; Cooper's Pl. 107.)

An information and bill cannot be supported unless the relator has some individual interest in the subject matter of the suit, (11 Sim. 380 ; 1 Vesey, Jr. 244,) and if the relator dies pending the action, no further proceedings can be had therein until a new relator is made a party to the record ; for in a suit instituted by information and bill combined, the relator sustains both the character of plaintiff and relator. (Mitford's Pl. 120 ; Cooper's Pl. 107.)

The fact that the information in this case represents to the Court that the respondent had commenced an action of ejectment against divers persons in possession, and who had long been in possession of the lands described in the patent, by virtue of a legal and equitable claim, does not aid the appellant's case ; for it does not appear that the State had anything to grant by the patent, but the contrary thereof is alleged ; hence upon the appellant's own showing the patent could not operate to conclude any third persons as to rights and interests they might have in the lands described ; and if the truth as to the character and quality of the lands be as stated by the information, it would be competent for any person having a legal right and interest in the lands to establish the fact in his defense at law to an action on behalf of the patentee to recover the possession.    (*Patterson* v. *Winn*, 11 Wheat. 380 ; *Pollard's Lessee* v. *Hagan*, 3 How. 212 ; *Goodtitle* v. *Kibbe*, 9 How. 471.)

What may have been the origin or what may be the nature of the interests of the persons alleged to have a legal and equitable claim to the lands described in the patent, we are not advised by the information, nor do we deem it a matter of any particular importance to know.  If such claim subsisted as a perfect title when California became ceded to the United States, then upon the happening of that event its character did not become changed for the worse by the treaty of cession. If the premises were high lands as contradistinguished from the lands the nature of which is described in the Acts of the

Legislature referred to, and were a part of the public domain at the time of the passage of the Act of the Congress of the United States by which California became one of the States of the Union, then it must follow that no title thereto could pass to the patentee by the patent issued, for by the Act for the admission of the State of California into the Union it was enacted " that the said State of California is admitted into the Union upon the express condition that the people of said State, through their Legislature or otherwise, shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do no act whereby the title of the United States to and right to dispose of the same shall be impaired or questioned."

In *Patterson* v. *Winn*, 11 Wheat. 380, it is laid down as the settled doctrine of the Supreme Court of the United States, that if a patent granted by a State is absolutely void upon its face, or the issuing thereof was without authority, or was prohibited by statute, or the State had no title, it may be impeached collaterally in a Court of law in an action of ejectment. But notwithstanding the patent may have been issued without authority, or the State may have had no title to grant, the patent would, in the first instance, be presumed, in an action of ejectment, to be valid, and to pass to the patentee a title to the lands described, and the burden of proof would be upon the party who might undertake its impeachment to establish the facts necessary for its overthrow; because it is not to be presumed *in limine* that the State has granted by patent lands which it did not own or have the right to grant. The party who may be permitted thus to impeach a patent issued by the State must himself possess a *status* authorizing him so to do. He must show that he has title to the premises, or such an interest therein in subordination to the title, wherever it may reside, as will authorize him to call the true title to his aid. (*Terry* v. *Megerle*, 24 Cal. 609; *Doll* v. *Meador*, 16 Cal. 324, 325.)

If the persons who are represented by the information to have a legal and equitable claim to the lands described in the

patent have rights and interests therein of the character alleged they are not entirely without remedy at law, though it may not be adequate for every purpose. The remedy at law may be sufficient for their present protection, though by reason of the patent the burden of proof may be cast upon them to show that the lands in question were not of the description and quality that could be granted by the State. But as the burden of proof rests upon those who may rightfully claim the lands in hostility to the patent, which, as we hold, is *prima facie* evidence for the uses of the patentee, they may invoke the equitable interposition of the Court to restrain by perpetual injunction its use as evidence of title in the patentee; or perhaps the Court might go further and in the exercise of its plenary power set it aside. (2 Story's Eq. Jur. Ch. 17.)

But the party in interest in such cases may maintain an action in his own name, as thereby he can attain to the same end in effect that could be accomplished by a proceeding in the name of the people of the State upon his relation; and this course better accords with the system of procedure provided by statute in this State. (Practice Act, secs. 4 and 254.)

Judgment affirmed.