Filed May 24, 1887.

| 111 | 143 |
| 116 | 308 |
| 119 | 388 |
| 119 | 409 |
| 111 | 143 |
| 131 | 372 |
| 111 | 143 |
| 136 | 571 |
| 111 | 443 |
| 141 | 515 |
| 141 | 527 |
| 142 | 559 |
| 111 | 143 |
| 150 | 230 |
| 111 | 143 |
| 158 | 582 |
| 111 | 143 |
| 168 | 577 |

---

### No. 12,618.

## THE BOARD OF COMMISSIONERS OF FRANKLIN COUNTY v. BUNTING.

STATUTE.—*Construction.*—*Custom.*—A practical construction given to a statute by custom is equivalent to a positive law.

COUNTY COMMISSIONERS.—*Authority to Build Jail and Sheriff's Residence.*—The board of commissioners of a county has authority to build a jail and a sheriff's residence in connection therewith.

SAME.—*Contract.*—*Plans and Specifications.*—*Right to Change.*—*Compensation.*—*Evidence.*—Under a contract between the board of commissioners and an architect, by which the former, acting officially, has the right to change the plans and specifications for the proposed building, evidence of a request for a change, not specifying the character of the alteration, by one member, acting individually, is not admissible in a suit upon the contract for compensation.

From the Fayette Circuit Court.

*S. E. Urmston, I. Carter, H. Berry* and *F. Berry*, for appellant.

*R. Hill, W. H. Martz, B. F. Claypool* and *J. H. Claypool,* for appellee.

ELLIOTT, J.—The principal question in this case is this: Is the board of commissioners of a county invested with authority to build a jail and sheriff's residence? This question appears in various forms, but it is not necessary to discuss in detail the various phases it assumes, for a decision upon the principal question settles all phases of it.

The board of commissioners represents the county, and, by express statute, as well as by necessary implication, is invested with very comprehensive powers. *Board, etc.,* v. *Saunders,* 17 Ind. 437; *Halstead* v. *Board, etc.,* 56 Ind. 363; *O'Boyle* v. *Shannon,* 80 Ind. 159; *Hoffman* v. *Board, etc.,* 96 Ind. 84; *Nixon* v. *State,* 96 Ind. 111. Some of the cases go so far as to say that it is the county. *State, ex rel.,* v. *Clark,* 4 Ind. 315; *Levy Court* v. *Coroner,* 2 Wall. 501. Whether the board does or does not constitute the county, may admit of question, but that it is invested with very extensive discretionary powers in the management of county affairs can not be doubted. The discretion vested in it is comprehensive enough to authorize it to build a sheriff's residence in connection with a county jail, for such an act is within the scope of its authority. The statute makes it the duty of the board of commissioners to provide and maintain a county jail, and the law enjoins upon the sheriff as an official duty, that he shall keep the jail. It results as a necessary implication, that he must be provided with the means of discharging this duty, and this involves the authority of providing him with a residence as part of the prison structure, leaving it to the discretion of the board of commissioners to devise and secure the erection of a suitable building. It was not intended that the jail should be composed entirely of prisoners' cells, but it was intended that it should be provided with such

rooms or apartments as will enable the sheriff, by himself or deputy, to properly and efficiently discharge his duties.

We know judicially that it has always been the custom to make suitable provision for the sheriff's residence, and this custom has given a construction to the law which could not be disregarded, even if there was doubt as to the meaning of the statute. In speaking of a practical construction given to a statute the Supreme Court of Illinois said: "It has always been regarded by the courts as equivalent to a positive law." *Bruce* v. *Schuyler*, 4 Gilm. 221. By another court the principle was stated, and it was said: "We can not shake a principle which in practice has so long and so extensively prevailed." *Rogers* v. *Gooden*, 2 Mass. 475. There are many cases which declare and enforce this principle; among them are *Stuart* v. *Laird*, 1 Cranch, 299; *Martin* v. *Hunter*, 1 Wheat. 304; *Cohens* v. *Virginia*, 6 Wheat. 264; *Ogden* v. *Saunders*, 12 Wheat. 213, 290; *Minor* v. *Happersett*, 21 Wall. 162; *State* v. *Parkinson*, 5 Nev. 15; *Pike* v. *Megoun*, 44 Mo. 491; *People* v. *Board, etc.*, 100 Ill. 495; *State* v. *French*, 2 Pinney (Wis.) 181.

One of the subordinate questions in the case arises on the ruling of the court refusing to permit the appellant to prove that one of the commissioners, in a conversation with the appellee, after the plans and specifications had been accepted, requested him to make a change in the plans and specifications prepared by him under his contract with the board. In that contract the appellee undertakes, as an architect, to prepare plans and specifications for a jail and sheriff's residence, and it is stipulated, among other things, that "It is hereby agreed by and between the said parties, that the party of the second part shall have said plans and specifications made and drawn in a good and sufficient manner, and present the same to the party of the first part, at their June session, 1881, and that it shall be at the option of the said party of the first part whether the same be received and ac-

cepted, and that the party of the first part is to have the right to alter and change said plans and specifications in such manner as they may at any time deem it proper and best to make such alteration or change. And that said party of the second part shall alter and change, add to, or take from such plans and specifications as the party of the first part may order. And the party of the second part shall so make, alter and change the same until the said party of the first part shall be satisfied."

It is doubtful whether the right of the board to compel the appellee to make changes was not at an end when the plans and specifications submitted by him were approved and accepted by the board, for the provision is that he was to make such changes until the board "shall be satisfied," and the acceptance would seem to be conclusive evidence that the board was satisfied. Waiving, however, a decision of this point, we adjudge the ruling to be right on other grounds. In our opinion the contract means that the request to make changes shall come from the board acting officially, and not from a member acting individually and in his private capacity. The cases of *McCabe* v. *Board, etc.*, 46 Ind. 380, and *Halstead* v. *Board, etc.*, 56 Ind. 363, do not oppose this conclusion, for in those cases there was official action by the board, and there was no contract requiring such action; while here, there is a contract requiring such action, and no such action was taken. In the cases referred to, the irregularity did not consist in a failure to take official action, but in the omission to enter that action of record; while in this case the failure was to take any official action at all. It is quite apparent, therefore, that there is a plain and an important difference between the cases. It is not the question in this case, as it was in those referred to, whether the board can only speak by its record, for the question is: Can the acts of individual members bind a party where official action is required? If it were held that individual members of the board might

bind a party by individual, and not official, action, then it might often happen that the act of a minority would bind the majority.

There is still another ground on which the ruling may be sustained, and that is this : It was not stated what changes were requested. We think that it was necessary for the appellee, in any event, to show with reasonable certainty that some specific changes were demanded, for it could not be expected that the appellee could proceed without some indication of what was required of him. In order to make the evidence material, it should appear that some definite change or alteration was proposed.

The fourth and fifth instructions are assailed by the appellant, but, as we think, without success. In discussing the principal question in the case, we have disposed of the substantial objections to these instructions. These instructions do not direct the jury, that in the event that the jail should not be built, the appellee might recover the contract price, but the direction is, that he may recover a reasonable compensation for the services rendered. This was certainly as favorable as the appellant had a right to ask. It is, indeed, very doubtful whether the fifth instruction does not give a much more favorable direction than the law warrants, for it asserts that even if the board of commissioners was in fault for not proceeding with the building after the award of the contract, still, the appellee can not recover the compensation fixed by the contract.

Judgment affirmed.

Filed May 24, 1887.