124 N. W. 701.

---

THE STATE OF NORTH DAKOTA, EX REL. ANDREW MILLER, ATTORNEY GENERAL, V. THE DISTRICT COURT OF BURLEIGH COUNTY, SIXTH JUDICIAL DISTRICT OF THE STATE OF NORTH DAKOTA, AND THE HON. W. H. WINCHESTER, JUDGE THEREOF.

Opinion filed January 12, 1910.

(124 N. W. 417.)

**Grand Jury—Enforcement of Prohibitory Law—Appearance of Attorney General.**

1. Section 9372, Revised Codes 1905, relating to the prohibition law, provides, among other things, as follows: "Whenever the state's attorney shall be unable, or shall neglect or refuse to enforce the provisions of this chapter in his county, or for any reason whatever the provisions of this chapter shall not be enforced in any county, it shall be the duty of the attorney general to enforce the same in such county, and for that purpose he may appoint as many assistants as he shall see fit, and he and his assistants shall be authorized to sign, verify or file all such complaints, informations, petitions and papers as the state's attorney is authorized to sign, verify or file, and to do and to perform any act that the state's attorney might lawfully do or perform * * *."

*Held,* that the attorney general and his assistants have the right to appear before the grand jury and examine witnesses and lay before it any matters relating to the violation of the prohibition law.

**Grand Jury—Appearance of Attorney General.**

2. Section 2494, Revised Codes of 1905, provides, among other things, as follows: "The attorney general or his assistants are authorized to institute and prosecute any cases in which the state is a party, whenever in their judgment it would be to the best interests of the state so to do."

*Held,* that the attorney general has the right to appear before the grand jury at any time when in his judgment he deems it for the best interests of the state so to do, and that each of his assistants has the same right.

Grand Jury—Appearance of Attorney General.

> 3. The right of the attorney general and his assistants to go before the grand jury is not affected by section 9829, Revised Codes of 1905, allowing only the state's attorney to appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them, and to interrogate witnesses before them whenever he thinks it necessary, and permitting no other person to be present during the sessions of the grand jury except the members and a witness actually under examination.

Application by the state, on the relation of Andrew Miller, Attorney General, for writ of certiorari to the District Court of Burleigh county, and W. H. Winchester, Judge.

Writ awarded.

*Andrew Miller,* for plaintiff.

*R. N. Stevens* and *Newton & Dullam* (*F. H. Register* and *T. R. Mockler,* of counsel), for defendant.

CARMODY, J.   This is an application by the attorney general for a writ of certiorari to the district court of Burleigh county, Sixth Judicial District, and the Hon. W. H. Winchester, judge thereof. It is agreed by counsel that the facts before us are the same facts which would be disclosed by the return to the writ. Our decision, therefore, will not only settle the preliminary question, whether the writ should issue, but also the ultimate question whether the order of the district judge sought to be reviewed by this proceeding, is valid or void.

On the 18th day of November, 1909, the attorney general, having before him a certain report of the public examiner relative to the condition and management of the offices of the county auditor and county commissioners of Burleigh county, North Dakota, which report had been transmitted to said attorney general by the governor; the attorney general transmitted a copy of said report to the respondent, the Hon. W. H. Winchester, together with a letter of transmittal from said attorney general, calling the attention of said respondent to certain irregularities and purported violations of law, claimed to constitute misconduct, malfeasance and misdemeanor in office on the part of said officials; also calling the attention of the said respondent to alleged violations of the prohibition law in said Burleigh county, and requesting the said respondent to call a grand jury for said Burleigh county to attend at the next session of the district court in and for said

county to the end that said grand jury might inquire into the subject matter of said report and all other offenses cognizable or triable in said county; that thereafter, on the 24th day of November, 1909, the judge of said court, in accordance with said request, made and issued his order for the calling of such grand jury, and caused the same to be filed with the clerk of said district court; that thereafter, in accordance with said order, the proper officers of such county caused to be summoned from the body thereof, in the manner authorized by law, 'twenty-three electors, having the qualifications of grand jurors, to meet in the county court house of Burleigh county at 10 o'clock, a. m., on the 30th day of November, 1909, being a day of the regular November term of said court; that on the same day respondent duly impanelled a grand jury of twenty-three men and charged the same in respect to their duties as such grand jurors; that as part of such charge in relation as to who might appear before the grand jury in the capacity of public prosecutor and adviser to said grand jury, the court said: "That the grand jury may at all reasonable times ask the advice of the court and of the state's attorney. The state's attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them, whenever he thinks it necessary, but that no other person is permitted to be present during their sessions except the members and a witness actually under examination;" that thereupon at said time in open court before the grand jury had retired, the attorney general stated to the court that he had several important matters that he desired to present to this grand jury as attorney general, and requested the court to amend its instructions by instructing the grand jury that the attorney general and his assistants might also appear before the grand jury and present such matters as the state's attorney might do; that thereupon the court made and caused to be entered in the record, the following order: "I will hold, General, that you have no right to go before the grand jury," to which ruling and order the attorney general excepted. No claim was made by the attorney general that the state's attorney of said Burleigh county refused or neglected to perform any of the duties of his office prescribed by law. We are asked by this writ to review the action of the respondent in denying the attorney general and his assistants the right to appear before such grand jury and present such matters as the state's attorney might.

Section 82 of our constitution provides for the election of an attorney general.

Section 83 provides that the power and duties of the attorney general shall be as prescribed by law.

Section 173 of the constitution provides for the election in each county of a state's attorney.

Section 9829, Revised Codes 1905, is as follows: "The grand jury may at all reasonable times ask the advice of the court or of the state's attorney. The state's attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them, and may interrogate witnesses before them whenever he thinks it necessary; but no other person is permitted to be present during their sessions except the members and a witness actually under examination, and no person whomsoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

Section 9372, Revised Codes 1905, relating to the duty of the attorney general, in enforcing the prohibition law, as far as material here, is as follows: "Whenever the state's attorney shall be unable, or shall neglect or refuse to enforce the provisions of this chapter in his county, or for any reason whatever the provisions of this chapter shall not be enforced in any county, it shall be the duty of the attorney general to enforce the same in such county, and for that purpose he may appoint as many assistants as he shall see fit, and he and his assistants shall be authorized to sign, verify or file all such complaints, informations, petitions and papers as the state's attorney is authorized to sign, verify or file, and to do and to perform any act that the state's attorney might lawfully do or perform; * * *"

Section 9788, Revised Codes 1905, is as follows: "All crimes or public offenses triable in the district courts must be prosecuted by information or indictment, except as provided in the next section."

Section 9794, Revised Codes 1905, as far as material here, is as follows: "All informations filed under the provisions of this article, shall be by the state's attorney of the county or judicial subdivision, or by the person appointed to prosecute * * *."

Section 123, Revised Codes 1905, as far as material here, is as follows: "The duties of the attorney general shall be:

1. To appear for and represent the state before the supreme court in all cases in which the state is interested as a party.

4. To consult with and advise the several state's attorneys in matters relating to the duties of their office; and when in his judgment the interests of the state require it, he shall attend the trial of any party accused of crime and assist in the prosecution."

Section 2494, Revised Codes 1905, as far as material here, is as follows: "The state's attorney is the public prosecutor, and must:

1. Attend the district court and conduct on behalf of the state all prosecutions for public offenses.

2. Institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that such offenses have been committed, and for that purpose, when not engaged in criminal proceedings in the district court, must attend upon the magistrates in cases of arrest, when required by them, except in cases of assault and battery, and petit larceny, and attend before, and give advice to the grand jury whenever cases are presented to them for their consideration.

3. Draw all indictments and informations, defend all suits brought against the state or his county, prosecute all bonds forfeited in the courts of record and all actions for the recovery of debts, fines, penalties and forfeitures accruing to the state or his county.

4. Deliver receipts for money or property received in his official capacity, and file duplicate receipts therefor with the county auditor.

5. On the first Mondays of January, April, July and October in each year, file with the county auditor an account, verified by his oath, of all moneys received by him in his official capacity during the preceding three months and at the same time pay it over to the county treasurer.

6. Give, when required, and without fee, his opinion in writing to the county, district, township and school district officers, on matters relating to the duties of their respective offices.

7. Keep a register of all official business, in which must be entered a note of each action, whether civil or criminal, prosecuted officially, and of the proceedings therein.

8. Make a written report to the attorney general, on the first day of each month, of all proceedings instituted or pending in his county in any court, other than justice courts, wherein the state is a party or is interested; which reports shall give the title of the case, the date when commenced, the purpose of the action, the proceedings had and taken therein, and the final disposition of such cases.

9. It is the intention of this article to make the attorney general, his assistants, and the state's attorney the only public prosecutors in all cases, civil and criminal, wherein the state, or county, is a party to the action, and that they only shall be authorized and empowered to perform the duties herein set forth, except as hereinafter provided. The attorney general or his assistants are authorized to institute and prosecute any cases in which the state is a party whenever in their judgment it would be to the best interests of the state so to do, and in case the state's attorney of any county refuses or neglects to perform any of the duties prescribed in subdivisions 2 and 3 of this section, after it has been properly brought to his attention, or when he has information that a public offense has been committed, or that a civil suit in which the state is a party, should be instituted and the fact of such refusal or neglect to perform such duty, and that the action is one that should be prosecuted, has been brought before the judge of the district court in the judicial district having jurisdiction of such action, by affidavit or otherwise, and said judge is satisfied that such action should be prosecuted, and that said state's attorney has failed or neglected to perform his duty, then in that case, he shall request the attorney general or an assistant attorney general to take charge of such prosecution * * *."

Chapter 195 of the Laws of 1907 make it the duty of the attorney general and the state's attorney to prosecute all violations of the pure food law.

Chapter 196 of the Laws of 1907 makes it the duty of the attorney general and the state's attorney to prosecute all violations of the pure drug law.

Chapter 197 of the Laws of 1907 makes it the duty of the attorney general and the state's attorney to prosecute all violations of the act concerning concentrated commercial feeding stuff

Chapter 211 of the Laws of 1907 makes it the duty of the attorney general and the state's attorney to prosecute all violations of

the law relating to the construction of Y's by railroad companies.

Chapter 259 of the Laws of 1907 makes it the duty of the state's attorney of the proper county and the attorney general, to prosecute all violations of the act defining pools and trusts.

Chapter 128 of the Laws of 1909 makes it the duty of the attorney general and the state's attorney to appear in the prosecution of criminal actions arising under the game and fish law.

Chapter 189 of the Laws of 1909 makes it the duty of the attorney general and the state's attorney of the proper county to prosecute all violations of the pure liquor law.

Chapter 209 of the Laws of 1909 makes it the duty of the attorney general and the state's attorney to prosecute all violations of the pure seed law.

Under section 9372, Revised Codes of 1905, supra, the attorney general and his assistants have authority to do and perform any act that the state's attorney might lawfully do or perform and for that purpose they are authorized to go before the grand jury.

State v. Winchester, 18 N. D. 534, 122 N. W. 1111; State v. Becker, 3 S. D. 29, 5 N. W. 1018; State v. Crilly, 69 Kan. 802, 77 Pac. 701.

State v. Becker was a prosecution for maintaining a common nuisance, on an information signed and verified by an assistant attorney general. Defendant demurred on the ground, among others, that the assistant attorney general had no power to sign or verify the information or bring or prosecute the action. Under a statute nearly similar to ours, in holding that the assistant attorney general had authority to sign, file and verify the information, the court uses the following significant language: "The attorney general is in the same department as the state's attorney, but having a larger jurisdiction, and is in a sense a superior and supervising officer."

In State v. Winchester, supra, the attorney general filed an information in the district court of Burleigh county against Duncan J. McGillis for an alleged violation of the prohibition law. The attorney general made an application to the said district court for a change of venue, which application was denied and the attorney general applied to this court for a writ of certiorari to review the action of the district court in denying the application of the attorney general for a change of venue.

Section 9931, Revised Codes 1905, is a part of the article relating to changes of venue in criminal actions, and is the only section of the code granting the state the right to a change of

venue. Said section reads as follows: "The state's attorney, on behalf of the state, may also apply in a similar manner for a removal of the action, and the court, being satisfied that it will promote the ends of justice, may order such removal upon the same terms and to the same extent as are provided in this article, and the proceedings on such removal shall be in all respects as above provided."

No question was raised as to the authority of the attorney general to file the information or apply for the change of venue in State v. McGillis. No valid objection could be raised as it was a proceeding for the enforcement of the prohibition law in Burleigh county, in which county for some reason the attorney general was of the opinion that the prohibtion law was not enforced.

Under the same section that authorized the attorney general to file the information against McGillis, he is authorized to appear and lay before the grand jury violations of the prohibition law in Burleigh county.

Section 9372, supra, is identical with section 7426 of the general statutes of 1901 of the state of Kansas. In upholding the authority of the assistant attorney general of the state of Kansas to sign an indictment against a violator of the prohibition law, in State v. Crilly, supra, the supreme court of Kansas says: "But the county attorney can cause witnesses to be subpoenaed before a grand jury, therein interrogate them himself, and give the jury any other information he may have. Therefore he can institute a prosecution in this manner as well as by the other methods provided by statute. These same powers are given to the attorney general and his assistants so far as concerns offenses against the prohibitory law. And the signing of an indictment charging the unlaw-- ful sale of intoxicating liquor is a step in the enforcement of that law. To clothe the assistant attorney general with authority to perform this duty in any case where there might be occasion for his services in that connection, was apparently one of the very purposes for which the statute was enacted."

In the case at bar the attorney general called the attention of the respondent, the Hon. W. H. Winchester, to alleged violations of the prohibitory law in Burleigh county and had, in our opinion, authority to appear before and bring to the attention of the said grand jury violations of the prohibition law in said Burleigh county.

It is made the duty of the attorney general, when for any reason whatever the prohibition law is not enforced in any county in the state, to enforce said law. Who is to judge when any reason exists for his enforcing the prohibition law in any county? Clearly the attorney general. The statute makes no provision for any other person. We might rest our decision and grant the writ on the ground that the attorney general and his assistants had authority to go before the said grand jury for the purpose of enforcing the prohibition law in said Burleigh county, but as the right of the attorney general to appear before a grand jury is a very important question, and one likely to arise in the future, we are disposed to pass upon the authority of the attorney general to appear before the grand jury in any county whenever or whereever there is a grand jury in session in this state.

Section 123, supra, is Chapter 24 of the session laws of 1901. It was approved March 11, 1901, with an emergency clause which is as follows: "Whereas, there is now no law requiring the attorney general to keep a record of actions in which the state is a party or interested, prosecuted by the state's attorneys of the several counties, therefore an emergency exists and this act shall be in force from and after its passage and approval."

There is no provision in this chapter requiring the state's attorneys of the several counties to make any report to the attorney general.

Section 2494, supra, is chapter 178 of the session laws of 1901, approved March 11, 1901, with no emergency clause. Subdivision 8 of this section requires the state's attorney to make a written report to the attorney general on the first day of each month, "of all proceedings instituted or pending in his county in any court, other than justice courts, wherein the state is a party or is interested."

These two sections, having been approved the same day, must be construed together, and we are of the opinion that a reasonable construction of them warrants the result arrived at in this case.

What did the legislature mean by requiring the state's attorney to make a written report on the first of each month of all proceedings instituted or pending in his county in any court, other than justice's courts, wherein the state is a party or is interested? We think it was to enable the attorney general to keep in touch with the business of the office of the state's attorney in the dif-

ferent counties. And in any county where the state's attorney was not properly performing his duties, either in the enforcement of the prohibition or other laws or in other matters, the attorney general or his assistant could institute and conduct prosecutions in such county or assist the state's attorney in the prosecution of such cases as the attorney general deemed best.

By said section 123 it is made the duty of the attorney general, when in his judgment the interests of the state require it, to attend the trial of any party accused of crime and assist in the prosecution.

By said section 2494 it is made the duty of the attorney general and his assistants to institute and prosecute any case in which the state is a party whenever in their judgment it would be to the best interests of the state so to do.

What is the meaning of the word "prosecution?" The word "prosecution" is defined in Vol. 23, Am &. Eng. Enc. Law, 2d Ed. 268-269, as follows: "To prosecute is to proceed against judicially. A prosecution is the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due course of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information."

As provided by section 2494, supra, the judge of the district court of any judicial district has authority, in certain contingencies to request the attorney general or his assistants to take charge of any prosecution. In such a case it will be conceded that the attorney general or his assistants would be authorized to lay such matters before the grand jury. We are of the opinion that the attorney general is the proper party to decide when he shall attend the trial of any party accused of crime, and assist in the prosecution and that the attorney general or his assistants are the proper parties to decide when it is to the best interests of the state to institute and prosecute any case.

People of the state of N. Y. v. Ballard et al., 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737; State v. Bowles, 70 Kan. 821, 79 Pac. 726, 69 L. R. A. 176; People v. Stratton, 25 Cal. 242; State ex rel. Nolan v. The District Court, 22 Mont. 25, 55 Pac. 916; State v. Robinson, 101 Minn. 227, 112 N. W. 269, 20 L. R. A. (N. S.) 1127.

People of the State of New York vs. Ballard, supra, was an action by the attorney general to remove the trustees of a business corporation and compel them to account for its property. The court of appeals of the State of New York, speaking through Judge Vann, says: "We think that the question as to what the public interests require is committed to the absolute discretion of the attorney-general, and that it cannot be made the subject of inquiry by the courts. If he abuses the great power intrusted to him, a remedy may be found in his removal from office, or in the election of a successor worthy of the high position."

People vs. Stratton, supra, was an action instituted by the attorney general of the State of California on behalf of the people to cancel a patent issued by the state. The defendant moved to dismiss on the ground that the attorney general had no authority or power to institute or prosecute the proceeding in this action in the name or on behalf of the people of the state of California. Among the duties which the attorney general was required by the laws of the state of California to perform was to attend each term of the supreme court and there prosecute or defend all causes in which the state might be a party. Nowhere was it made the duty of the attorney general to institute any action in a court of original jurisdiction on behalf of the state or otherwise, but it was his duty, whenever in his opinion required by the public service or when directed by the governor ,to repair to any district in the state and assist the district attorney in the discharge of his duties. The court says: "The act, as already observed, does not make it the duty of the attorney general to institute any action on behalf of the state in any court of original jurisdiction, and from this silence, it is argued on behalf of the respondent, he can have no such power without the aid of legislative enactment. But can this be so when the nature and objects of the office are considered? The attorney general is the law officer of the state. * * * * The question as to the right of the attorney general of this state ex officio to file an information in the nature of a bill in chancery, to annul a patent for lands granted by the state to an individual, is one perhaps of difficult solution, but by analogy to the powers exercised by officers of like character in England, and in most, if not all the states of the American Union, we think he may do so in a case where the matter involved in the state immediately concerns the rights and interests of the state.

People vs. Oakland Water-Front Co., 118 Cal. 234, 50 Pac. 305, was an action instituted by the attorney general to determine adverse claims to real property and for other incidental relief. It was contended by the defendants that the attorney general had no authority to institute the action. The supreme court, following the decision in People vs. Stratton, overruled their contention.

State vs. Bowles, supra, was a prosecution for soliciting a bribe. The governor requested the attorney general to attend and prosecute the same. The defendant made a motion to quash the indictment on the ground, among others, that the indictment is not signed by the county attorney as required by law, nor by any person who is authorized by law to sign indictments in said county. The court, in denying the motion to quash on these grounds, says: "When directed by the governor or either branch of the legislature to appear and prosecute criminal proceedings, in any county, he becomes the prosecuting attorney of that county in those proceedings, and has all the rights that any prosecuting officer there may have including those of appearing before the grand jury, signing indictments, and pursuing cases to final determination."

State ex- rel Nolan vs. The District Court, supra, was an application by the attorney general for a writ to review the action of the district court in denying him the right to appear before the grand jury. The statutes of Montana, referring to the duties of the attorney general, are as follows: "Among other requirements therein mentioned, he is to exercise a supervisory power over county attorneys in all matters pertaining to the duties of their offices, and from time to time to require of them reports as to the condition of public business intrusted to their charge." The statute further provides as one of the attorney general's duties that he shall, "when required by the public service, or directed by the governor, assist the county attorney of any county in the discharge of his duties."

The attorney general was, in this case, attempting to appear before and give advice to the grand jury, and interrogate witnesses in regard to bribery charges made by certain members of the legislative assembly, consequent upon a senatorial election, then pending before said legislative body, and that the judge of the district court expressly directed the attention of the grand jury to said bribery charges. The opinion granting the writ was written by that eminent jurist, Judge Hunt, then one of the judges of the Supreme

court of Montana, and now a federal judge. We take the liberty of quoting freely from his opinion. The court says: "A duty to exercise supervisory power clearly implies the possession of supervisory power. There is, therefore, in the Attorney General a right to oversee for direction, to inspect with authority all matters pertaining to the duties of the county attorneys of the state, and to direct with superintending oversight the official conduct and acts of such officials; and it is his prescribed duty to exercise and perform these acts, and to do whatever may be necessary and proper to render his power in these respects effective. Duty to exercise general supervisory power over county attorneys would not, however, necessarily carry with it a duty to actively assist a county attorney in the discharge of his duties, for supervision might be exerted without actual assistance. * * * * The legislature stepped further, and, guided by the public interests, announced by another special clause of the statute cited, as one of the attorney general's duties, that he shall, when required by the public service, or directed by the governor, assist the county attorney of any county in the discharge of his duties. Here we have a specific direction by which the attorney general is to do more than to exercise those supervisory powers contemplated by previous requirements of the law—he is to assist the county attorney in the discharge of his duties when the public service requires it, or when the governor directs him to give such assistance. * * * * Nor is there any limit whatever to the assistance to be given—no point where it is to begin or to end, except the bound of the official duty of the county attorney. Just so long as the county attorney has any duty to discharge, and just so far as he may go in discharging it, so long is it the right and obligation of the Attorney General to actively assist him in the discharge of such a duty; and equally far in executing the duties shall he go when the public service requires it, or when directed to assist by the governor.

"The policy of the law is easily discerned. The Attorney General is the principal law officer of the state. His duties are general; his authority is co-extensive with public legal affairs of the whole community. His advice often affects the rights of all persons within the State, and, excepting judgments and orders of court, his opinions control public interests more largely than do the acts of any other official of the State. Responsibilities of so high a character, are usually put upon a lawyer of ability, experience and char

acter, and, presuming the Attorney General to be such, the statute has given him the significant, yet extensive, powers referred to. Again, exigent times occasionally arise in the affairs of a state, where local considerations render it impolitic to intrust a county attorney with the discharge of his duty unaided by learned counsel representing the supreme authority of the state. Circumstances sometimes demand that there shall not only be a supervisory action, but an assistance to an inferior official as well, to the end that justice may be more certainly attained. When considerations of this nature move the Attorney General, or, even when they do not move him, yet the Governor is moved by them, and directs him to exert his authority, he shall assist the county attorney, and must do so in the discharge of the duties which the county attorney is required by law to perform. * * * * It is suggested that the Attorney General cannot conduct examinations before the grand jury, because of section 1910 of the Penal Code, which provides that an indictment must be set aside when a person is present during the session of the grand jury, and when the charge embraced in the indictment is under consideration, except as provided in section 1788. Section 1788 of the Penal Code is as follows: "The grand jury may, at all reasonable times, ask the advice of the court, or the judge thereof, or the county attorney; but unless such advice is asked, the judge of the court must not be present during the sessions of the grand jury. The county attorney of the county may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable by them, and may interrogate witnesses before them whenever they or he thinks it necessary; but no other person is permitted to be present during the sessions of the grand jury except the members and the witnesses actually under examination, and no person must be permitted to be present during the expression of their opinions or giving their votes upon any matter before them. * * * * The construction contended for would, logically, deny to the attorney general the very right accorded him —to assist the county attorney in the discharge of his duties. * * * We cannot adopt a construction of Section 1788 which will confine the power of the Attorney General within narrow limitations, which are neither expressed nor implied in the law prescribing the duties of the Attorney General or of the county attorney, and which we believe to be wholly against the letter, as well as the

spirit of the law.  *  *  *  Our devision rests upon the delegation of authority to the Attorney General to assist the county attorney, the public service requiring it, and upon the broad ground that, under the law, assistance means personal participation and help to the county attorney in the lawful discharge of his official duties, no matter what the tribunal or body may be wherein the duty lies, and no matter what the nature of the official duty may be."

The highest courts in New York and Montana hold that the attorney general is the proper party to determine when the public service requires his taking part or prosecuting actions on the part of the state.

The supreme court of Kansas holds that he can appear before the grand jury in matters relating to the violation of the prohibition law. The supreme court of Montana holds in Nolan vs. The District Court, supra, that the attorney general can appear before the grand jury in any case and at any time he desires. Our statutes give the attorney general more power than the statutes of the state of Montana. The statutes of Montana, under which the supreme court held the attorney general had the right, on his own motion, to appear before the grand jury, only authorized him, in addition to his supervisory power, to assist the county attorney in the discharge of his duties.

Section 1788 of the Penal Code of Montana, stating who may go before the grand jury is practically the same as Section 9829 of the Revised Codes of 1905.

Our statutes as hereinbefore stated, require the attorney general to appear for the state in all cases before the supreme court; to consult with and advise the several state's attorneys and when in his judgment the interests of the state require it, to attend the trial of a party accused of crime and assist in the prosecution. He or his assistants to institute and prosecute any case in which the state is a party, whenever in their judgment it would be to the best interests of the state so to do; to do anything that the state's attorney might do in his county in enforcing the prohibition law; to prosecute all violations of the several laws enacted by the legislatures of 1907 and 1909, as hereinbefore stated.

We cannot believe that the legislature of this state imposed so many duties upon the attorney general and then deprived him of the means of performing those duties.

If he cannot go before the grand jury then his authority to institute and prosecute cases and to prosecute any violation of the several laws, hereinbefore mentioned, is for naught.

Sec. 9841, Revised Codes of 1905, is as follows: "If twelve grand jurors do not concur in finding an indictment against a defendant who has been held to answer, the original complaint and the certified record of the proceedings before the magistrate transmitted to them, must be returned to the court, with an indorsement thereon, signed by the foreman, to the effect that the charge is dismissed."

Sec. 9842, Revised Codes 1905, is as follows: "The dismissal of the charge does not, however, prevent its being again submitted to a grand jury as often as the court may so direct. But without such direction it cannot be again submitted."

In any case in which the attorney general makes a complaint before a magistrate and the defendant is held to answer the same, he or his friends could have a grand jury called and a hostile or luke-warm state's attorney could undoubtedly prevent an indictment, unless the district court ordered the matter to be submitted to another grand jury and the same proceedings might again be had. Thus in every case every prosecution instituted by the attorney general or his assistants could be brought to an end. It is true that the attorney general cannot, by going before the grand jury, force the grand jury to indict any person, but he can lay any matters he desires before said grand jury and have a thorough investigation of such matters.

The power of officers, implied and incidental, is as follows: "The rule respecting such powers is, that in addition to the powers expressly given by statute to an officer or board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers." Throop on Public Officers, Sec. 542, and cases cited.

People v. Stratton, 25 Cal. 242; People v. Oakland Waterfront Co., 118 Cal. 234, 50 Pac. 305; Board of County Commissioners v. Bunting, 111 Ind. 143, 12 N. E. 151; Slotts v. Rockingham County, 53 N. H. 598; Haynes v. Butler, 30 Ark. 69.

In Board of County Commissioners of Franklin County v. Bunting, supra, the statutes of Indiana made it the duty of the board of commissioners to provide and maintain a county jail and made

it the duty of the sheriff to keep such jail. The court there held that without further legislation the commissioners were authorized to erect a jail and sheriff's residence.

In Haynes v. Butler, supra, which was an action by the county treasurer against a tax collector, the court said: "The duty to receive the money from the collector, to keep, and to pay the same over to the persons entitled, being thus devolved upon the treasurer, to discharge his trust and duty he must be clothed with the power to sue for and recover it."

Under a statute authorizing the governor or either branch of the legislature to direct the attorney general to appear and prosecute criminal proceedings in any county, the supreme court of Kansas, in State v. Bowles, supra, held that the attorney general, when so directed by the governor or either branch of the legislature, became the prosecuting attorney of that county in these proceedings, and had all the rights that any prosecuting officer had, including those of appearing before the grand jury, signing indictments, etc. Would he have any less authority if the statutes authorized him to institute and prosecute any criminal proceedings, when in his judgment the best interests of the state required it? We think not.

In People v. Stratton, supra, the laws of California did not authorize the attorney general to commence actions on behalf of the state to cancel patents issued by the state. The state had authority to cancel patents issued in certain cases. The supreme court of California held that, notwithstanding the absence of statutory authority so to do, the attorney general had authority to bring actions to cancel patents.

If the ruling of the respondent in this case is sustained it will nullify, in a large measure, the powers of the attorney general and make him merely a figurehead. He cannot institute and prosecute cases in which the state is a party unless he can go before the grand jury.

It will, we think, be conceded that the attorney general has authority to appear before the grand jury of any county in which the state's attorney refuses or neglects to perform his duties, when the judge of the district court of that county requests the attorney general to take charge of prosecutions therein, but we are of the opinion that without any request by the judge of the district court as herein stated, the attorney general has authority

to go before the grand jury at any time and present any matters to such grand jury that he desires; his assistants have the same authority.

The attorney general is therefore entitled to have the writ prayed for, issue.

Writ awarded.

All concur, except MORGAN, C. J., and FISK, J., dissenting.

MORGAN, C. J. (dissenting). The right of the state's attorney to appear before grand juries for the examination of witnesses, to the exclusion of all other persons except a witness actually under examination, has existed by statute since long before the office of territorial attorney general was created. Section 195, chapter 3, of the Code of Criminal Procedure of 1877 provided that the "District attorney may, at all times, appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them, and may interrogate witnesses before them whenever he thinks it necessary; but no other person is permitted to be present during their session except the members and a witness actually under examination." This section has been in force by express amendment ever since its enactment, and is now section 9829, Revised Codes 1905.

Under chapter 8, laws of 1883, creating the office of attorney general and defining his duties, there is nothing indicating that the attorney general was given any express authority to draw indictments or appear before the grand juries. Besides being authorized to appear for the territory in the Supreme Court to "prosecute and defend" all actions, civil or criminal, in which the territory was interested as a party, he was authorized to appear before any other court and "prosecute and defend in any cause or matter, civil or criminal." Nothing in that act can be construed to give him any authority to appear before grand juries. The duties of the attorney general were again a matter of statutory enactment in chapter 110, laws of 1890, known as the "Prohibition Law." The provisions of section 12 of that act are set forth in the opinion of Judge Carmody. Without doubt, that section warrants a construction that under certain circumstances the attorney general could properly appear before grand juries in the place of the state's attorney, whenever that official has failed to perform the duties of his office; but it is expressly stated by the attorney general in the record in this case, that he does not claim that the

state's attorney of Burleigh county has not fully and faithfully performed his whole duty in reference to the enforcement of the prohibition law. Hence, it needs no further comment to show that the attorney general is not authorized to go before the grand jury under that section, under such facts.

The duties of the attorney general and the duties of the state's attorneys were again the subject of enactments in chapters 24 and 178 of the laws of 1901. In said chapter 24, prescribing the duties of the attorney general, he is given no express power to appear before grand juries. In this chapter, his duties are, in part, "to consult with and advise the several state's attorneys in matters relating to the duties of their office; and when, in his judgment the interests of the state require it, he shall attend the trial of any party accused of crime and assist in the prosecution."

It is not contended by the attorney general that this subdivision confers upon him any authority to appear in an advisory or other capacity before grand juries, and such contention would be repugnant to the terms of this subdivision, which confers authority only upon him to assist the state's attorney in criminal trials, whenever he deems it necessary for him to do so, in the state's interests. Under the provisions of section 9, of chapter 178, it is claimed that the power is expressly granted to the attorney general to appear, generally, before grand juries. That section, so far as material, reads as follows: "It is the intention of this act to make the attorney general, his assistants, and the state's attorney the only public prosecutors in all cases, civil or criminal, wherein the state or county is a party to the action, and that they only shall be authorized and empowered to perform the duties herein set forth, except as hereinafter provided. The attorney general or his assistants are authorized to institute and prosecute any cases in which the state is a party, whenever in their judgment it would be to the interests of the state so to do, and in case the state's attorney of any county refuses or neglects to perform any of the duties prescribed in subdivisions 2 and 3 of this section, after it has been properly brought to his attention, or when he has information that a public offense has been committed, or that a civil suit in which the state is a party should be instituted, and the fact of such refusal or neglect to perform such duty, and that the action is one that should be prosecuted, has been brought before the judge of the district court in the judicial district having juris-

diction of such actions, by affidavit or otherwise, and said judge is satisfied that such action should be prosecuted, and that said attorney has failed or neglected to perform his duty, then, in that case, he shall request the attorney general or an assistant attorney general to take charge of such prosecution, or he shall appoint some suitable person, an attorney at law, and the person so appointed shall thereupon be vested with all the powers of such state's attorney for that action, but for no other purpose, and the district court shall, by order, to be entered in the minutes of the court, fix his fees therefor, etc., etc."

Subdivisions 2 and 3 referred to in section 9, refer to the duties of state's attorneys in reference to instituting proceedings before magistrates for criminal offenses and attending before and giving advice to the grand jury whenever cases are presented to them for their consideration, and drawing of indictments and informations, and prosecuting actions on forfeited bonds, and prosecuting of actions for the recovery of debts, fines, penalties or forfeitures accruing to the state or to his county. The provision in said section 9 that the attorney general and his assistants, and the state's attorney are "authorized to institute and prosecute any case in which the state is a party," in no way authorized the attorney general to appear before grand juries, and that provision in no way refers to grand jury proceedings. Appearing before a grand jury in a criminal matter for the purpose of advising such grand jury or examining witnesses is not "instituting or prosecuting a case in which the state is a party." That chapter was not enacted, as is known as a matter of history, and as shown by its reading, with a view to changing the procedure in reference to appearance before grand juries by the state's attorney. That chapter was enacted to obviate certain alleged abuses which had become prevalent in the state in prosecuting injunctional and abatement proceedings by assistant attorneys general throughout the state, whereby it was claimed that excessive costs and attorney's fees were taxed against buildings where nuisances were kept and maintained. The object of this chapter was to limit the right to bring such injunctional proceedings to states attorneys, attorneys general and their assistants. It was intended to debar or prohibit the appointment of assistant attorneys general, who would not look to the costs to be assessed against the real estate or buildings where nuisances were kept and maintained, and the nuisances declared abated, for their compensation.

The portion of section 9 referring to failures of state's attorneys to perform the duties, as contained in said subdivisions 2 and 3 of that section, cannot be claimed as applicable under the facts, as admitted by the attorney general, to the effect that there is no contention that the state's attorney has failed to fully perform his duty. Irrespective of that fact, the attorney general has no authority to act in the premises except on the request of the judge of the district court. The record in this case does not show that the attorney general was requested to act, nor does it show that the state's attorney has failed to perform his duties.

The attorney general practically concedes that no express authority exists for the official displacement of the state's attorneys, and the substitution of the attorney general in the performance of all duties before grand juries, for them. The attorney general is forced to claim that there is no statute unconditionally authorizing him to appear before the grand juries unless the word "advise," as used in subdivision 4, chapter 24, Laws of 1901, is construed to mean "supervise." I find no authority for adding or enlarging the meaning of the word "advise," and if, for certain purposes not apparent, the word "advise" may be construed to mean "supervise," it would not be authority for the attorney general to appear before grand juries in the place of the state's attorney. I do not think that the attorney general is right in his contention that a new meaning shall be given to the well-understood word "advise."

It must not be forgotten that the attorney general is contending for the right to go before grand juries in all cases and under all circumstances when criminal causes or matters are under investigation. This should not be held to be his right from, or by construing, fragments of statutes, but it should clearly appear that such right was intended to be granted to him before the attempted innovation be sanctioned by this court. Such a radical revolution in procedure should not be established by singling out certain words or sentences, and stretching their meaning. The various statutes should be construed together, and therefrom it should be determined whether the legislature intended to supplant the state's attorneys in every county if it be the will of the attorney general to do so. This should not be construed to be the law by doubtful or uncertain implication.

Every enactment considered in the majority opinion can be construed consistently with retaining section 9829, Revised Codes 1905,

in full force and vigor. If the attorney general may appear before grand juries, then that section has been materially amended without being so understood by district judges, state's attorneys or attorneys general dealing with that section during the past twenty years.

I shall not review the cases relied on in the majority opinion to uphold the attorney general's contention. On reading them I think it a plain conclusion that they are each based on statutes entirely dissimilar, or upon circumstances bringing them within statutes like our own. The only question considered by me in this case has been whether the statutes of the state, when construed together, authorize the attorney general to appear before grand juries, other than in the exceptional cases above mentioned, and my conclusion is that no such authority has been granted to him.

I therefore respectfully dissent from the conclusion written by my brother, Carmody. I am authorized to say that Judge Fisk concurs in the views above expressed.